## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| OPEN TEXT CORPORATION AND | ) | |
| OPEN TEXT S.A. ULC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. _6:20-cv-00928_ |
| | ) | |
| ALFRESCO SOFTWARE, LTD., | ) | JURY TRIAL DEMANDED |
| AND ALFRESCO SOFTWARE, INC., | ) | |
| ALFRESCO SOFTWARE AMERICA, INC. | ) | |
| BLUE FISH DEVELOPMENT GROUP, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Open Text Corporation and Open Text SA ULC (collectively, "Plaintiffs" or "OpenText") allege against Defendants Alfresco Software Ltd, Alfresco Software, Inc., Alfresco Software America, Inc. (collectively "Alfresco") and Blue Fish Development Group, Ltd. ("Blue Fish") (collectively, "Defendants") as follows:

1.      Founded in 1991, OpenText Corporation evolved out of a project at the University of Waterloo that created innovated text indexing and string-search technology. For over 25 years, OpenText Corporation has provided information management solutions that allow companies to organize and manage content, operate more efficiently, increase engagement with customers, collaborate with business partners, and address regulatory and business requirements. Open Text SA ULC is a wholly-owned subsidiary of Open Text Corporation.

2.      OpenText Corporation provides such solutions by distributing software products and providing customer support and professional services through a number of subsidiaries, including Open Text, Inc., which sells OpenText software and services in the United States.

1

3.      The OpenText family of companies (collectively "OpenText") has approximately 15,000 employees, more than 74,000 customers, and over $3.11 billion in annual revenues. OpenText invested approximately $1 billion on research and development over the three years ending June 30, 2020.

4.      OpenText is a leading provider of Enterprise Content Management ("ECM") products, which refer to a variety of solutions for managing business content. One such solution provides a repository for electronic documents (such as those created via Microsoft Office, Computer-Aided Design, or Portable Document Format) and allows for functions such as organization, display, classification, access and version control, event auditing, rendition, and search. ECM also includes software tools and services for collaboration, records and email management, and archiving.

5.      OpenText's ECM provides the foundation for its offerings in a broader market category known as Enterprise Information Management ("EIM"). EIM encompasses capabilities such as Business Process Management ("BPM"), Customer Experience Management ("CEM"), Information Exchange ("IE"), and Discovery. OpenText offers a range of software products and services in each of these areas, including Documentum. OpenText's technologies have become critical to organizations looking for efficient content management options.

6.      Gartner's Magic Quadrant report for 2019, published October 30, 2019, named OpenText  a "Leader" in Content Services Platforms. And Gartner's 2019 Market Share Analysis, published July 24, 2020, ranked OpenText one of the "Top Five Content Services Providers, Worldwide" in 2019; in particular, OpenText was ranked first for "Content Services Platforms."

7.      OpenText currently maintains three offices in the State of Texas, two of which are located in this judicial district, including the Austin office and the San Antonio Office. Over 60

2

employees work in OpenText's Austin office, including employees in engineering, customer support, legal and compliance teams, IT, and corporate development. The Austin office also hosts one of OpenText's data centers.

8.     OpenText tracks its business through four revenue streams: license, customer support, cloud services, and professional services. OpenText receives license revenue from its software products; customer support revenue from renewable support and maintenance OpenText provides to customers who have purchased its products; cloud services revenue from certain "managed hosting" services arrangements; and professional services revenue from consulting fees OpenText collects for providing implementation, training, and integration services related to OpenText's product offerings.

9.     Alfresco Software, Ltd., Alfresco Software, Inc., and Alfresco Software America, Inc. (collectively, "Alfresco"), provide ECM software in the form of online, on-premises, and hybrid content management services which can be accessed by computers or mobile devices.

10.     Alfresco's ECM software includes, without limitation, modules for Document Management, Enterprise Collaboration, Process Management, and Governance Services, such as Records Management, eDiscovery and Legal Holds, and Security and Controlled Access.

11.     Alfresco competes directly with OpenText in the ECM and EIM markets by its manufacture, use, sale, and offer for sale of Alfresco's ECM software, which infringes OpenText's intellectual property rights.

12.     OpenText brings this lawsuit to protect its intellectual property investments and to hold Alfresco accountable for its infringement. As a result of Alfresco's unlawful competition in this judicial district and elsewhere in the United States, OpenText has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

## NATURE OF THE CASE

13.     Plaintiffs bring claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for the infringement of the following United States Patent No. 7,062,515 ("the '515 patent"), No. 8,117,152 ("the '152 patent"), No. 7,590,665 ("the '665 patent"), and No. 8,645,318 ("the '318 patent") (collectively, the "Patents-in-Suit").

## THE PARTIES

14.     Plaintiff OpenText Corp. is a Canadian corporation with its principal place of business at 275 Frank Tompa Drive, Waterloo, Ontario, Canada.

15.     Plaintiff Open Text SA ULC is a Nova Scotia, Canada corporation with its registered address at 1959 Upper Water Street, Suite 900, Halifax, Nova Scotia, B3J 2X2 Canada. Open Text SA ULC is a member of the OpenText family of companies and is a wholly owned subsidiary of Open Text Corp.

16.     Defendant Alfresco Software, Ltd is a foreign corporation with its global headquarters at Bridge Avenue, The Place, Maidenhead, SL6 1AF, United Kingdom.

17.     Defendant Alfresco Software, Inc. is a Delaware corporation with its principal place of business at 100 Worcester St., Suite 203 in Wellesley, Massachusetts. Alfresco Software, Inc. is a subsidiary of Alfresco Software, Ltd.

18.     Defendant Alfresco Software America, Inc. is a Delaware corporation with its principal place of business at 2839 Paces Ferry Road SE, Suite 720, Atlanta, Georgia 30339.

19.     Defendant Blue Fish Development Group Ltd is a Texas limited partnership with places of business listed at 8100 Shoal Creek Blvd, Austin, TX 78757; 701 Brazos St., Suite 700, Austin, TX, 78701; and 3410 Far West Blvd., Suite 265, Austin, TX 78731.

## JURISDICTION & VENUE

20.    This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.    This Court has personal jurisdiction over Defendants because they regularly conduct business in the State of Texas and in this district, including operating systems and/or providing services in Texas and in this district that infringe one or more claims of the Patents-in-Suit in this forum. Alfresco has, either directly or through intermediaries such as Blue Fish, purposefully and voluntarily placed its infringing product and/or services into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District, as detailed below.

22.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because, upon information and belief, Alfresco regularly conducts business within this District, has a regular and established place of business in this District, and has committed acts of infringement within this District. In addition, on information and belief, as a foreign corporation with sufficient contacts with this District, venue is proper against Alfresco Software Ltd. in this District. Further, on information and belief, venue is proper in this District against Blue Fish Development Group, Ltd., which as set out above and below, is organized under the laws of Texas and has regular and established places of business in this District.

23.    Both Alfresco Software Americas, Inc. and Alfresco Software Ltd. are registered businesses in Texas. (Exhibit 1.)

24.    On information and belief, Alfresco conducts its business through locations within this judicial district, including on information and belief at least one location present from at least July 2015 through May 2020:

6.  ALFRESCO SOFTWARE INC
    TIN: ███████

4816 CHESNEY RIDGE DR
AUSTIN, TX 78749-1140
Jul 15

Match Names/Locations (up to 5):
ALFRESCO SOFTWARE AMERICAS INC

4816 CHESNEY RIDGE DR
AUSTIN,TX78749-1140
May 20

(Exhibit 2.) On information and belief, Alfresco may have or has had additional locations in this judicial district. (Exhibit 2.)

25.    On information and belief, Alfresco has employees in this district, including Scott Ashcraft, Technical Lead, Expert Support (Exhibit 3) and Ganessan Paramanathan, Senior Solutions Engineer, Strategic Accounts (Exhibit 4).

26.    On information and belief, Alfresco relies on a network of partners to provide implementation services to its customers. For example, Alfresco represented that, by the end of 2016, it expected to have 70% of its business deployed through its channel partners. (Exhibit 5.)

27.    Through its gold, and later platinum, level partner, Blue Fish, based in Austin, Texas, Alfresco and Blue Fish make, use, advertise, offer for sale, and/or sell infringing ECM systems within this judicial district. (Exhibit 6 ("scalable Alfresco Enterprise Content Management System").) For example, beginning as early as August 14, 2009, "Alfresco Software, Inc. . . . and Blue Fish Development Group, Ltd., an ECM-focused consulting and application development firm based in Austin, TX, [ ] announced that Blue Fish ha[d] become a member of the Alfresco Software Gold Partner Program." (Exhibit 7.) Through Blue Fish, Alfresco specifically targets the "Texas region," which "offers Alfresco considerable growth potential":



(See  https://www.alfresco.com/news/press-releases/blue-fish-development-group-joins-alfresco-gold-partner-program)

      28.    Alfresco ECM software is Blue Fish's "recommended platform[]":



(*See* https://bluefishgroup.com/ecm-services/)

29.    Blue Fish encourages its customers to use infringing Alfresco ECM software by

offering an "Alfresco Quick Start" program (Exhibit 8) program and its "Alfresco Small Bites" program, through which Blue Fish offers evaluation, installation, configuration, customization and development of Alfresco ECM software, as well as migrating documents from external sources or other ECM systems into Alfresco's ECM system. (Exhibit 9.) Blue Fish has recommended that at least several of its customers use Alfresco's ECM software and has helped migrate customers from other ECM platforms to Alfresco's ECM platform, including replacing the Texas Education Agency's FileNet ECM system with Alfresco's Enterprise Content Management System. (Exhibit 10.)

30.      Through its partner BP3, headquartered in Austin, Texas, Alfresco advertises, offers for sale, and sells infringing ECM within this judicial district. (Exhibit 11.) For example, through BP3's Austin headquarters, Alfresco is able to offer implementation services directly to enterprise customers in this district. (Exhibit 12.)



31.     Alfresco has sold infringing ECM to at least the following customers who have

regular and established places of business in this judicial district:

- Pitney Bowes, with an office located at 1825B Kramer Lane Suite 100, Austin TX 78758-

  4965. (Exhibit 13; Exhibit 14.)

- Cisco Systems Inc., with an office located at 12515-3 Research Park Loop, Austin, TX 78759. (Exhibit 15.)

- Carlson Rezidor Hotel Group, with multiple hotels in both San Antonio and Austin, TX. (Exhibit 16; Exhibit 17; Exhibit 18.)

- Liberty Mutual Insurance, with at least two sales offices in Austin, TX. (Exhibit 19; Exhibit 20.)

- RBC Capital Markets, with offices in both Austin, TX (300 W. 6th Street, Suite 2220, Austin, TX 78701) and San Antonio, TX (303 Pearl Parkway, Suite 220, San Antonio, TX 78215). (Exhibit 21; Exhibit 22.)

- Saks Fifth Avenue, with a store at 7400 San Pedro Avenue, San Antonio, TX 78216. (Exhibit 23.)

32.     As further detailed below, Alfresco and Blue Fish's use, provision of, offer for sale, sales, and advertising of ECM software within this judicial district infringe the Patents-in-Suit. Alfresco's certified partners infringe the Patents-in-Suit by using Alfresco's ECM software within this judicial district. Alfresco's customers infringe the Patents-in-Suit by using Alfresco's ECM software within this judicial district.

33.     Alfresco encourages partners—and Alfresco and Blue Fish encourage customers— to use infringing software at least by making its content services available on its website, widely advertising those services, providing applications that allow partners and users to access those services, and providing technical support to users.

34.     Because Alfresco and Blue Fish actively target customers served by OpenText and OpenText offices in Austin and San Antonio, Alfresco and Blue Fish's infringement adversely impacts the over one hundred OpenText employees who live and work in and around this judicial

11

district. Indeed, Alfresco and Blue Fish openly, notoriously, and deliberately targeted their infringing ECM software against OpenText's patented ECM offerings, including Documentum:

## Why Alfresco?

## Alfresco has a Great ROI

With the current economic climate, our clients are looking for ways to reduce the TCO of their ECM infrastructure. Several of our clients are migrating all or part of their content from expensive traditional ECM platforms (==Documentum==, FileNet, ==OpenText==) to other platforms that they feel have lower TCO. I've talked to at least three pharmaceutical companies, for example, that are moving part of their content out of Documentum because they feel that it's overkill for their needs. The content in question isn't regulated and isn't used very frequently, and they just can't justify the cost of Documentum licenses for it. One of my clients told me, "It's like keeping your Timex watch in a bank vault. That makes sense for a Rolex, but it's overkill for a Timex." These companies are continuing to use Documentum for their most critical content, but they are using other platforms for less critical content. OSHA, NYPD, Morgan Stanley, and Cisco are just some of the companies that have transitioned from one of the "Big Three" ECM vendors to Alfresco.

(Exhibit 24 (highlights added).)

## THE PATENTS-IN-SUIT

35.     U.S. Patent No. 7,062,515 ("the '515 patent"), entitled "System and Method for Synchronization of a File in a Cache," was duly and legally issued on June 13, 2006. A true and correct copy of the '515 patent is attached as Exhibit A.

36.     The '515 patent is valid and enforceable.

37.     U.S. Patent No. 8,117,152 ("the '152 patent"), entitled "System and Method for the Synchronization of a File in a Cache," was duly and legally issued on February 14, 2012. A true and correct copy of the '152 patent is attached as Exhibit B.

38.     The '152 patent is valid and enforceable.

39.     U.S. Patent No. 7,590,665 ("the '665 patent"), entitled "System and Method for the Synchronization of a File in a Cache," was duly and legally issued on September 15, 2009. A true and correct copy of the '665 patent is attached as Exhibit C.

40.     The '665 patent is valid and enforceable.

41.     U.S. Patent No. 8,645,318 ("the '318 patent"), entitled "System and Method for the Synchronization of a File in a Cache," was duly and legally issued on February 4, 2014. A true and correct copy of the '318 patent is attached as Exhibit D.

42.     The '318 patent is valid and enforceable.

43.     The Patents-in-Suit are generally related to cache management and techniques for synchronizing cached files with a database. (*E.g.* '155 patent, 1:8-10.)  In particular, they relate to systems and methods for synchronization of a cache. (*Id*. at 3:22-28.)

44.     The specifications disclose and specifically claim inventive and patentable subject matter that represents significant improvements over conventional client/server computer networks that were available at the time of filing of Patents-in-Suit and are more than just generic apparatus or software components performing conventional activities.

45.     The inventors of the Patents-in-Suit, David Thomas and Scott Wells, invented the technology described and claimed in the Patents-in-Suit while working at Austin-based Vignette Corporation, a company founded in 1995 that offered a suite of content management, collaboration, and document management software.

46.    At the time of filing of the Patents-in-Suit, it had become increasingly popular for organizations to use centralized databases to store files. ('665 patent, 1:23-50.) Such a database allows employees to access the database from remote computers via a network, in order to access and work on stored files. (*Id*.) "Because database assets are usually transported over a relatively slow network connection, a cache at the user's computer can be used to increase the speed with which files can be accessed and modified." (*Id*. at 1:58-61.)

> A cache typically stores a local copy of a database asset on the user's computer. Thus a user can access and modify a local copy of a file, which is generally much faster than accessing a file directly over a network. When a user makes a change to the local or "cached" file copy, the change can . . . be synchronized with the database from which the file was originally retrieved.

('665 patent, 1:61-67.)

47.    Performing such a synchronization can be quite complex, because (1) database assets include a variety of different file types, such as Microsoft Word files, Microsoft Excel files, graphics files, etc.; and (2) different users may have different preferences for file editing tools, such as two users each editing a word processing document with two different text editors. ('665 patent, 2:1-20.)

48.    While several synchronization methods existed at the time of filing of the '665 patent, these prior art methods were plagued with disadvantages and inefficiency. ('665 patent, 2:21-3:24)   Mr. Thomas and Mr. Wells recognized these problems with the prior art. First, organizations could force users to employ a custom-designed tool for editing database assets, reducing the complexity of reconciling different tools; however, this solution does not allow a user to seamlessly implement his or her tool of choice, requires that the user learn a new tool, and results in extra expense to the organization. ('665 patent, 2:22-33.) Second, a second "synchronization program" could be installed on the client machine; however, a user is limited to only those tools for which the organization has a corresponding synchronization program and users are required to

take the extra step of saving the updated file not only to his client machine but also to the synchronization program. ('665 patent, 2:34-3:3.) Third, an operating system-level implementation allows users to view database assets as if they were locally situated on the client machine; however, this solution requires additional programming at the operating system "driver" level, at which any small coding error will cause the user's client machine to crash and loss of data ('665 patent, 3:4-25.).

49.     The Patents-in-Suit claimed system/method for synchronizing database assets solves this content management problem by reciting specific and significant improvements over the conventional client/server network, such as, for example, the monitoring and synchronization of a file cache. ('665 patent, 3:28-55.)

50.     For example, a "cache manager" stores a database asset as a cached file to allow the user access and notifies the operating system to open the cached file, such that the operating system is able to open the file using the appropriate application for its file type. ('665 patent, cl. 1.) Upon notification by the file management system that the cached file has been modified, the cache manager communicates the cached file to the database, such that the local and server files are synchronized. ('665 patent, cl. 1, 3:36-45.) The claims of the '665 patent are directed to these specific improvements in the capabilities of client/server networks and not to an abstract process that merely invokes these devices as tools.

51.     Given the state of the art at the time of filing of the Patents-in-Suit, the claim limitations, both individually and as an ordered combination, were not conventional, well-understood, or routine. The Patents-in-Suit disclose, among other things, an unconventional technological solution to an issue arising specifically in the context of client/server networks. The solutions implemented by the claimed inventions provide a specific and substantial improvement

over prior synchronization methods, including by introducing novel elements combined in an unconventional manner directed to improving the function and working of client/server networks such as the claimed "storing the database asset in a cache as a cached file, wherein the cache manager stores the database asset as the cached file; notifying an operating system to open the cached file using a local application associated with a file type . . . and if the cached file has been modified, communicating the cached file to the database" ('665 patent, cl. 1) and the claimed "determine if the cached file at the client computer has been modified by a user using the locally running application based on a notification from a file management system of an operating system; and if the cached file has been modified, save the cached file from the cache directly to the database" ('515 patent, cl. 1).

52. The inventors therefore developed a method that improved performance with regard to accessing and modifying database assets. (*E.g.* '515 patent, 11:21-67.) As discussed above, these claimed elements and their combination were not present in the prior art, and represent unconventional and concrete improvements over the prior art.

53. Consistent with the problems identified by the Patents-in-Suit, which are rooted in client/server networks and their use of complex and centralized databases, the solutions claimed in the Patents-in-Suit are also rooted in the same technology and cannot be performed with pen and paper or in the human mind. This technical context is reflected in the claims of the Patents-in-Suit, as described above. A person having ordinary skill in the art at the time of the invention of the Patents-in-Suit would not have understood that the inventions could or would be performed solely in the human mind or using pen and paper and doing so would ignore the stated purpose of the Patents-in-Suit and the problem the patented technology was specifically designed to address. Doing so would also run counter to the inventors' detailed description of the inventions, and the

16

language of the claims, and be a practical impossibility.

54.     Open Text S.A. ULC is the holder of all right, title, and interest in the '515, '152, '665, and '318 patents (collectively, the "Patents-in-Suit"), including all rights to collect damages throughout the period of Defendants' infringing acts, all rights to prevent others from making, having made, using, offering for sale, or selling products or services covered by such patents, and all rights to enforce the Patents-in-Suit.  Open Text S.A. ULC is a wholly-owned subsidiary of Open Text Corp.

## ACCUSED PRODUCTS

55.     Alfresco Content Services provides a platform of Enterprise Content Management (ECM) Software ("the Accused Product") for enterprises and their users to store, manage, synchronize, and access content. For example, Alfresco's ECM software includes at least Alfresco Desktop Sync, and any and all similar functionality, which automatically synchronizes content between the Alfresco repository and end user desktops, ensuring user's offline work is synchronized with the network. On information and belief, each implementation of at least Alfresco Desktop Sync (including for Mac and for Windows) and Alfresco Sync Service operates similarly for purposes of determining infringement.

## FIRST CAUSE OF ACTION
### (INFRINGEMENT OF THE '515 PATENT)

56.     OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

57.     Alfresco's products and/or services that infringe the '515 patent include, but are not limited to, the Accused Products and use thereof.

58.     Alfresco makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States. On information and belief, Blue Fish uses, sells,

17

and/or offers to sell the Accused Products and components thereof.

59.     Alfresco and Blue Fish directly infringe—literally and/or under the doctrine of equivalents—at least claim 1 of the '515 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

60.     For example, claim 1 of the '515 patent recites:

> 1. A system for synchronizing a cached file with a database:
>
> a computer processor;
>
> a network connection device operable to establish a connection with a database;
>
> a computer readable memory containing a local cache; and
>
> a software program, executable to run in user space on a client computer, stored on a computer medium and executable by the computer processor to:
>
> send a request to the database for a file;
>
> receive the file at the client computer directly from a database;
>
> store the file as a cached file in the local cache;
>
> notify the operating system to open the cached file using a locally running application associated with the file type for the cached file;
>
> determine if the cached file at the client computer has been modified by a user using the locally running application based on a notification from a file management system of an operating system; and
>
> if the cached file has been modified, save the cached file from the cache directly to the database.

61.     The Accused Products practice each limitation of claim 1 of the '515 patent.

62.     As recited in the preamble, the Accused Products include a "system for synchronizing a cached file with a database." For example, Alfresco's Sync Service "synchronizes files between the desktop and repository," as described in the image below. Alfresco Sync Service, available at: https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

63.    The Accused Products include "a computer processor" as required by claim 1 of the '515 patent. For example, Alfresco Desktop Sync, which is part of Alfresco's Sync Services, can operate on a user's desktop with Windows or Mac operating system as described in the image below. Either Windows or Mac requires a processor. Alfresco Desktop Sync 1.4, available at: https://docs.alfresco.com/desktopsync1.4/concepts/ds-overview.html.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop, even when working offline.

Once the folders and sites are selected, they are automatically downloaded and visible using Microsoft File Explorer (for Windows) or Finder (for Mac).

64.    The Accused Products include "a network connection device operable to establish a connection with a database" as required by claim 1 of the '515 patent. For example, Alfresco's Sync Service synchronizes files between the desktop and repository. See Alfresco Sync Service, available       at:       https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html. Therefore, Alfresco's Sync Service requires a network connection device to establish a connection between the desktop and the repository.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

65.    In addition, the configuration of Alfresco Desktop Sync allows a user to update the network access configuration as described in the image below, also indicating the presence of at least one network connection device in the Accused Products. Configuring Desktop Sync, available at: https://docs.alfresco.com/print/book/export/html/2424609.

**Desktop Sync configuration**

You can configure Desktop Sync using the AlfrescoSync.conf file located at:

- (Windows)

  `<userHome>\AppData\Local\Alfresco`

- (For Mac)

  `~/Library/Application Support/Alfresco`

Using the configuration file, you can update:

- timer values, such as polling and retry intervals
- sync constraint patterns for files/folders to be ignored by Desktop Sync
- disk space limits
- custom content type mappings for particular file extensions
- user interface defaults and customization (including localization)
- network access configuration
- debug logging

66.    The Accused Products include "a computer readable memory containing a local cache," as required by claim 1 of the '515 patent. For example, the client's desktop operating Alfresco Desktop Sync contains a local cache located on a local hard drive (e.g., the C drive) and configured to store documents synchronized with a repository, as described by the image below. See Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html

## Selecting content to sync

Once you've set up Desktop Sync, all your Alfresco Content Services folders are displayed from My Files, Shared Files, and My Sites. Use the Choose files and folders to sync screen to select the content to sync between Alfresco Content Services and your desktop. The content is synced at C:\Users\<username>\Alfresco.

Note: The screen provides an estimate of how much disk space will be occupied, so only select the content you need. The more content you select, the more space will be taken on your local machine and the more time it will take to perform the initial sync.

67.     The Accused Products include "a software program, executable to run in user space on a client computer, stored on a computer medium and executable by the computer processor to send a request to the database for a file," as required by claim 1 of the '515 patent. For example, Alfresco Desktop Sync is an executable application that runs on the user's desktop. During operation, Alfresco sends a request to a repository for a file from the repository when a user uses the Choose files and folders to sync screen to select the content to sync, as described by the image below. Selecting content to sync, at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html.

## Selecting content to sync

Once you've set up Desktop Sync, all your Alfresco Content Services folders are displayed from My Files, Shared Files, and My Sites. Use the Choose files and folders to sync screen to select the content to sync between Alfresco Content Services and your desktop. The content is synced at C:\Users\<username>\Alfresco.

Note: The screen provides an estimate of how much disk space will be occupied, so only select the content you need. The more content you select, the more space will be taken on your local machine and the more time it will take to perform the initial sync.

68.     The Accused Products include "a software program … to … receive the file at the client computer directly from a database" and to "store the file as a cached file in the local cache" as required by claim 1 of the '515 patent. For example, copies of all the content a user has selected to sync for Alfresco Desktop Sync are stored in a local cache, as described in the image below. Desktop Sync also automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. See Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html



69.     The Accused Products include "a software program … to … notify the operating system to open the cached file using a locally running application associated with the file type for the cached file," as required by claim 1 of the '515 patent. For example, Alfresco Desktop Sync allows modifications made to local copies of a file to be synchronized with Alfresco versions, thereby inherently allowing a user to open the local copies. On information and belief, if a conflict occurs between the locally edited cached file and the file on the server, upon close of the cached file, Desktop Sync notifies the user of the conflict.  The user can double click on the local version of conflicted file and the Desktop Sync will cause the operating system to open the file indicated by the user. On information and belief, the Desktop Sync sends API calls to the operating system to open the cached file using the locally running application associated with the file type for the selected file.

70.     The Accused Products include "a software program … to … determine if the cached file at the client computer has been modified by a user using the locally running application based on a notification from a file management system of an operating system," as required by claim 1

of the '515 patent. On information and belief, Desktop Sync registers with the operating system to be notified of changes to files in the local cache. Based on Desktop Sync registering for the notifications, Desktop Sync receives a notification of a change to a cached file in the local cache and determines that the cached file has changed.

71.     A Desktop Sync client can poll the synchronization service for changes every 5 minutes, by default. Changes on the device will trigger a poll of the synchronization service for changes. The synchronization service responds with a set of events that represent what has changed in that folder since the last poll request. Based on that, the client determines, e.g., what changes need to be pushed to the repository and what changes need to be pulled from the repository. See Desktop Sync Process, available at: https://docs.alfresco.com/syncservice/concepts/desktop-sync-process.html

72.     The Accused Products include "a software program … to … if the cached file has been modified, save the cached file from the cache directly to the database," as required by claim 1 of the '515 patent. On information and belief, when the cached file has been changed, Desktop Sync saves the cached file back to the Alfresco Content Services repository. The cached file is saved directly back to the Alfresco Content Services repository without the user having to take the additional actions of accessing Desktop Sync and saving the file separately in Desktop Sync.

73.     Desktop Sync automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. as described by the image below. See Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html.



74.     Each claim in the '515 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '515 patent.

75.     Defendants actively induced and are actively inducing infringement of at least claim 1 of the '515 patent, in violation of 35 U.S.C. § 271(b).

76.     Alfresco and Blue Fish's customers and end users of the Accused Products directly infringe claim 1 of the '515 patent, at least by using the Accused Products, as described in the paragraphs above.

77.     Defendants knowingly induce infringement of at least claim 1 of the '515 patent by customers and end users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and/or distribution of the Accused Products in the United States.

78.     Defendants instruct customers and end users, at least through its marketing, promotional, and instructional materials and/or training to use the infringing Accused Products, as

described in detail in the paragraphs above.

79.     Defendants advertise and instruct third parties on how to use the Accused products.

80.     In addition to marketing the Accused Products for use in an infringing manner, Alfresco also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner. Blue Fish provides training to customers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.

81.     Defendants have sales and technical support staff that assist Alfresco's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

82.     At least Alfresco contributes to infringement of the '515 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including, for example, the Alfresco Sync Services and associated software applications. Such components are substantial, material parts of the claimed inventions of the '515 patent and have no substantial non-infringing use.

83.     The Alfresco Sync Services and associated software applications supplied by Alfresco are especially made and especially adapted for use in infringing the '515 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

84.     On information and belief, Alfresco had knowledge of the '515 patent on or around June 5, 2013, the date of the Complaint in *Open Text S.A. v. Box, Inc.*, No. 2:13-cv-00319 (E.D. Va.), and not later than August 1, 2014, the date of consolidation of *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD (N.D. Cal) and *Open Text S.A. v. Alfresco Software Ltd. et al.*, No. 2:13-cv-

04843-JD (N.D. Cal.).

85.     Because Alfresco had knowledge of the '515 patent and proceeded to copy the infringing functionality and willfully, wantonly, deliberately and knowingly infringe, directly and indirectly, the '515 patent, Alfresco's infringement has been and continues to be willful.

86.     Blue Fish has had knowledge of the '515 patent since at least the filing of this lawsuit. Blue Fish's continued infringement is therefore deliberate and willful.

87.     Defendants' infringement of the '515 patent is without license or other authorization.

88.     Alfresco and Blue Fish's continued infringement of the '515 patent has damaged and will continue to damage Plaintiffs.

89.     Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '515 patent.

90.     Defendants' infringing acts are causing and will continue to cause Plaintiffs at least irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

91.     This case is exceptional, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

<u>**SECOND CAUSE OF ACTION**</u>
**(INFRINGEMENT OF THE '152 PATENT)**

92.     OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

93.     Alfresco's products and/or services that infringe the '152 patent include, but are not limited to, the Accused Products and use thereof.

94.     Alfresco makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States. On information and belief, Blue Fish uses, sells, and/or offers to sell the Accused Products and components thereof.

95.     Alfresco and Blue Fish directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '152 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

96.     For example, claim 1 of the '152 patent recites:

1. A method for synchronizing a file in a cache comprising:

a cache manager at a client computer receiving a database asset from a database at a database server, wherein the client computer is executing an operating system, the cache manager, and a local application, wherein client computer is coupled to the database server over a network;

the cache manager storing the database asset in a cache of the client computer as a cached file;

the cache manager prompting the operating system to open the cached file using a local application associated with a file type for the cached file;

receiving, at the cache manager, a notification from the operating system indicating that the cached file has been modified;

the cache manager determining that the cached file has been modified based on receiving the notification from the operating system; and

the cache manager communicating the modified cached file to the database.

97.     The Accused Products practice each limitation of claim 1 of the '152 patent.

98.     As recited in the preamble, the Accused Products provide a method for "synchronizing a file in a cache." For example, Alfresco's Sync Service "synchronizes files between the desktop and repository," as described in the image below. Alfresco Sync Service, available at: https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

99.     The Accused Products provide a method "a cache manager at a client computer receiving a database asset from a database at a database server, wherein the client computer is executing an operating system, the cache manager, and a local application, wherein the client computer is coupled to the database server over a network" as required by claim 1 of the '152 patent. For example, Alfresco Desktop Sync manages a cache of the client's desktop at least by synchronizing the files stored in the cache with a repository, as described by the image below. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html

## Selecting content to sync

Once you've set up Desktop Sync, all your Alfresco Content Services folders are displayed from My Files, Shared Files, and My Sites. Use the Choose files and folders to sync screen to select the content to sync between Alfresco Content Services and your desktop. The content is synced at C:\Users\<username>\Alfresco.
Note: The screen provides an estimate of how much disk space will be occupied, so only select the content you need. The more content you select, the more space will be taken on your local machine and the more time it will take to perform the initial sync.

100.     Alfresco Desktop Sync receives copies of the content a user has selected to sync from Alfresco Content Services, which is a database, as described by the image below. *See* Alfresco        Desktop        Sync        1.4,        available        at https://docs.alfresco.com/print/book/export/html/2424580. Alfresco Content Services system includes a server running a database. *See* Alfresco Content Services architecture, available at: https://docs.alfresco.com/print/book/export/html/2544159.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop, even when working offline.

## System architecture

At the core of the Alfresco Content Services system is a repository supported by a server that persists content, metadata, associations, and full text indexes. Programming interfaces support multiple languages and protocols upon which developers can create custom applications and solutions. Out-of-the-box applications provide standard solutions such as document management and records management.

101.    Alfresco Desktop Sync can operate on a user's desktop running either Windows or

Mac as described in the image below. Alfresco Desktop Sync 1.4, available at:

https://docs.alfresco.com/desktopsync1.4/concepts/ds-overview.html.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop, even when working offline.

Once the folders and sites are selected, they are automatically downloaded and visible using Microsoft File Explorer (for Windows) or Finder (for Mac).

102.    Client's desktop operating Alfresco Desktop Sync for Windows includes at least

Explorer and a browser as local applications. *See* Using Desktop Sync for Windows, available at:

https://docs.alfresco.com/print/book/export/html/2424582.

## Setting up Desktop Sync

The first time you open Desktop Sync you need to enter your login details to connect to Alfresco.

1. Open Desktop Sync just as you would any other program by double-clicking the icon on your desktop or opening it through Explorer.

Speak to your IT team if you need any help.

2. Enter the Alfresco address supplied by your IT team.

This is the address of the server - make sure the URL provided is the repository URL.

This could be, for example, *https://alfresco.mycompany.com/alfresco*.

103.     Alfresco Desktop Sync synchronizes files between the desktop and the repository.

Alfresco Sync Service, available at: https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.     Therefore, Alfresco Desktop Sync includes a network connection device to establish a connection between the desktop and the repository.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

104.     The configuration of Alfresco Desktop Sync allows a user to update the network access configuration as described in the image below, also indicating the presence of at least one network connection device in the Accused Products. Configuring Desktop Sync, available at: https://docs.alfresco.com/print/book/export/html/2424609.

**Desktop Sync configuration**

You can configure Desktop Sync using the AlfrescoSync.conf file located at:

- (Windows)

  `<userHome>\AppData\Local\Alfresco`

- (For Mac)

  `~/Library/Application Support/Alfresco`

Using the configuration file, you can update:

- timer values, such as polling and retry intervals
- sync constraint patterns for files/folders to be ignored by Desktop Sync
- disk space limits
- custom content type mappings for particular file extensions
- user interface defaults and customization (including localization)
- network access configuration
- debug logging

105.    The Accused Products provide a method "the cache manager storing the database asset in a cache of the client computer as a cached file" as required by claim 1 of the '152 patent. For example, copies of all the content a user has selected to sync for Alfresco Desktop Sync are stored in a local cache, as described in the image below. Desktop Sync also automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made.    *See*    Selecting    content    to    sync,    available    at:

https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html



106.    The Accused Products provide a method "the cache manager prompting the operating system to open the cached file using a local application associated with a file type for the cached file" as required by claim 1 of the '152 patent. For example, Alfresco Desktop Sync allows modifications made to local copies of a file to be synchronized with Alfresco versions, thereby inherently allowing a user to open the local copies stored in the local cache as the cached files. On information and belief, if a conflict occurs between the locally edited cached file and the file on the server, upon close of the cached file, Desktop Sync notifies the user of the conflict.  The user can double click on the local version of the conflicted file and Desktop Sync will cause the operating system to open the file indicated by the user. On information and belief, the Desktop Sync sends API calls to the operating system to open the cached file using the locally running application associated with the file type for the selected file.

107.    The Accused Products provide a method "receiving, at the cache manager, a notification from the operating system indicating that the cached file has been modified" and "the cache manager determining that the cached file has been modified based on receiving the

notification from the operating system" as required by claim 1 of the '152 patent. On information and belief, Desktop Sync registers with the operating system to be notified of changes to files in the local cache. Based on Desktop Sync registering for the notifications, Desktop Sync receives a notification of a change to a cached file in the local cache and determines that the cached file has changed.

108.    A Desktop Sync client can poll the synchronization service for changes every 5 minutes, by default. Changes on the device will trigger a poll of the synchronization service for changes. The synchronization service responds with a set of events that represent what has changed in that folder since the last poll request. Based on that, the client determines, e.g., what changes need to be pushed to the repository and what changes need to be pulled from the repository. *See* Desktop Sync Process, available at: https://docs.alfresco.com/syncservice/concepts/desktop-sync-process.html.

109.    The Accused Products provide a method "the cache manager communicating the modified cached file to the database" as required by claim 1 of the '152 patent. On information and belief, when the cached file has been changed, Desktop Sync saves the cached file back to the Alfresco Content Services repository. The cached file is saved directly back to the Alfresco Content Services repository without the user having to take the additional actions of accessing Desktop Sync and saving the file separately in Desktop Sync.

110.    Desktop Sync automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. as described by the image below. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html.



111.    Each claim in the '152 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '152 patent.

112.    Defendants actively induced and are actively inducing infringement of at least claim 1 of the '152 patent, in violation of 35 U.S.C. § 271(b).

113.    Alfresco and Blue Fish's customers and end users of the Accused Products directly infringe claim 1 of the '152 patent, at least by using the Accused Products, as described in the paragraphs above.

114.    Defendants knowingly induce infringement of at least claim 1 of the '152 patent by customers and end users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

115.    Defendants instruct customers and end users, at least through their marketing, promotional, and instructional materials, to use the infringing Accused Products, as described in detail in the paragraphs above.

116.    Defendants advertise and instruct third parties on how to use the Accused products.

117.    In addition to marketing the Accused Products for use in an infringing manner, Alfresco also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner. Blue Fish provides services and training to customers of the Accused Products that direct and encourages customers of the Accused Products to use the Accused Products in an infringing manner.

118.    Defendants have sales and technical support staff that assist Alfresco's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

119.    At least Alfresco contributes to infringement of the '152 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including, for example, the Alfresco Sync Services and associated software applications. Such components are substantial, material parts of the claimed inventions of the '152 patent and have no substantial non-infringing use.

120.    The Alfresco Sync Services and associated software applications supplied by Alfresco are especially made and especially adapted for use in infringing the '152 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

121.    On information and belief, Alfresco had knowledge of the '152 patent on or around June 5, 2013, the date of the Complaint in *Open Text S.A. v. Box, Inc.*, No. 2:13-cv-00319 (E.D.

Va.), and not later than August 1, 2014, the date of consolidation of *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD (N.D. Cal) and *Open Text S.A. v. Alfresco Software Ltd. et al.*, No. 2:13-cv-04843-JD (N.D. Cal.).

122.    Because Alfresco had knowledge of the '152 patent and proceeded to copy the infringing functionality and willfully, wantonly, deliberately and knowingly infringe, directly and indirectly, the '152 patent, Alfresco's infringement has been and continues to be willful.

123.    Blue Fish has had knowledge of the '152 patent since at least the filing of this lawsuit. Blue Fish's continued infringement is therefore deliberate and willful.

124.    Defendants' infringement of the '152 patent is without license or other authorization.

125.    Defendants' continued infringement of the '152 patent has damaged and will continue to damage Plaintiffs.

126.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '152 patent.

127.    Defendants' infringing acts are causing and will continue to cause Plaintiffs at least irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

128.    This case is exceptional, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### THIRD CAUSE OF ACTION
#### (INFRINGEMENT OF THE '665 PATENT)

129.    OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

130.    Alfresco's products and/or services that infringe the '665 patent include, but are not limited to, the Accused Products and use thereof.

131.    Alfresco makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States. On information and belief, Blue Fish uses, sells, and/or offers to sell the Accused Products and components thereof.

132.    Alfresco and Blue Fish directly infringe—literally and/or under the doctrine of equivalents—at least claim 1 of the '665 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

133.    For example, claim 1 of the '665 patent recites:

1. A method for synchronizing a file in a cache comprising:

providing a system comprising a client computer running an operating system, a cache manager and one or more applications and a database server running a database management application managing a database;

receiving a database asset from the database at the client computer;

storing the database asset in a cache as a cached file, wherein the cache manager stores the database asset as the cached file;

notifying an operating system to open the cached file using a local application associated with a file type for the cached file, wherein the cache manager notifies the operating system to open the cached file;

opening the cached file with the local application associated with the file type for the cached file;

determining if the cached file has been modified based on a notification from a file management system of the operating system, wherein the file management system sends the notification to the cache manager; and

if the cached file has been modified, communicating the cached file to the database.

134.    The Accused Products practice each limitation of claim 1 of the '665 patent.

135.    As recited in the preamble, the Accused Products provide a method for "synchronizing a file in a cache." For example, Alfresco's Sync Service "synchronizes files

between the desktop and repository," as described in the image below. Alfresco Sync Service, available at: https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

136.    The Accused Products provide a method "providing a system comprising a client computer running an operating system, a cache manager and one or more applications and a database server running a database management application managing a database" as required by claim 1 of the '665 patent. For example, Alfresco Desktop Sync, which is part of Alfresco's Sync Services, can operate on a user's desktop running either Windows or Mac as described in the image below.        Alfresco        Desktop        Sync        1.4,        available        at: https://docs.alfresco.com/desktopsync1.4/concepts/ds-overview.html.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop, even when working offline.

Once the folders and sites are selected, they are automatically downloaded and visible using Microsoft File Explorer (for Windows) or Finder (for Mac).

137.    The Accused Products provide a method "providing a system comprising … a cache manager" as required by claim 1 of the '665 patent. For example, Alfresco Desktop Sync manages a cache of the client's desktop at least by synchronizing the files stored in the cache with

a repository, as described by the image below. *See* Selecting content to sync, available at:

https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html

## Selecting content to sync

Once you've set up Desktop Sync, all your Alfresco Content Services folders are displayed from My Files, Shared Files, and My Sites. Use the Choose files and folders to sync screen to select the content to sync between Alfresco Content Services and your desktop. The content is synced at C:\Users\<username>\Alfresco.
Note: The screen provides an estimate of how much disk space will be occupied, so only select the content you need. The more content you select, the more space will be taken on your local machine and the more time it will take to perform the initial sync.

138.    The Accused Products provide a method "providing a system comprising … one or more applications" as required by claim 1 of the '665 patent. For example, client's desktop operating Alfresco Desktop Sync for Windows includes at least Explorer and a browser. *See* Using Desktop Sync for Windows, available at: https://docs.alfresco.com/print/book/export/html/2424582.

## Setting up Desktop Sync

The first time you open Desktop Sync you need to enter your login details to connect to Alfresco.

1. Open Desktop Sync just as you would any other program by double-clicking the icon on your desktop or opening it through Explorer.
   Speak to your IT team if you need any help.
2. Enter the Alfresco address supplied by your IT team.
   This is the address of the server - make sure the URL provided is the repository URL.
   This could be, for example, *https://alfresco.mycompany.com/alfresco*.

139.    The Accused Products provide a method "providing a system comprising … a database server running a database management application managing a database" as required by claim 1 of the '665 patent. For example, Alfresco Desktop Sync synchronizes content between client's desktop and Alfresco Content Services, as described by the image below. *See* Alfresco Desktop Sync 1.4, available at https://docs.alfresco.com/print/book/export/html/2424580. Alfresco Content Services system includes a server running a database. *See* Alfresco Content Services architecture, available at: https://docs.alfresco.com/print/book/export/html/2544159.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop, even when working offline.

## System architecture

At the core of the Alfresco Content Services system is a repository supported by a server that persists content, metadata, associations, and full text indexes. Programming interfaces support multiple languages and protocols upon which developers can create custom applications and solutions. Out-of-the-box applications provide standard solutions such as document management and records management.

140. The Accused Products provide a method "receiving a database asset from the database at the client computer" and "storing the database asset in a cache as a cached file, wherein the cache manager stores the database asset as the cached file" as required by claim 1 of the '665 patent. For example, copies of all the content a user has selected to sync for Alfresco Desktop Sync are stored in a local cache, as described in the image below. Desktop Sync also automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html



141.    The Accused Products provide a method "notifying an operating system to open the cached file using a local application associated with a file type for the cached file, wherein the cache manager notifies the operating system to open the cached file" and "opening the cached file with the local application associated with the file type for the cached file" as required by claim 1 of the '665 patent. For example, Alfresco Desktop Sync allows modifications made to local copies of a file to be synchronized with Alfresco versions, thereby inherently allowing a user to open the local copies stored in the local cache as the cached files. On information and belief, if a conflict occurs between the locally edited cached file and the file on the server, upon close of the cached file, Desktop Sync notifies the user of the conflict.  The user can double click on the local version of the conflicted file and Desktop Sync will cause the operating system to open the file indicated by the user. On information and belief, the Desktop Sync sends API calls to the operating system to open the cached file using the locally running application associated with the file type for the selected file.

142.    The Accused Products provide a method "determining if the cached file has been modified based on a notification from a file management system of the operating system, wherein the file management system sends the notification to the cache manager" as required by claim 1 of the '665 patent. On information and belief, Desktop Sync registers with the operating system to be notified of changes to files in the local cache. Based on Desktop Sync registering for the notifications, Desktop Sync receives a notification of a change to a cached file in the local cache and determines that the cached file has changed.

143.    A Desktop Sync client can poll the synchronization service for changes every 5 minutes, by default. Changes on the device will trigger a poll of the synchronization service for changes. The synchronization service responds with a set of events that represent what has changed in that folder since the last poll request. Based on that, the client determines, e.g., what changes need to be pushed to the repository and what changes need to be pulled from the repository. *See* Desktop Sync Process, available at: https://docs.alfresco.com/syncservice/concepts/desktop-sync-process.html

144.    The Accused Products provide a method "if the cached file has been modified, communicating the cached file to the database" as required by claim 1 of the '665 patent. On information and belief, when the cached file has been changed, Desktop Sync saves the cached file back to the Alfresco Content Services repository. The cached file is saved directly back to the Alfresco Content Services repository without the user having to take the additional actions of accessing Desktop Sync and saving the file separately in Desktop Sync.

145.    Desktop Sync automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. as described by the image below. *See*

Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html.



146.    Each claim in the '665 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '665 patent.

147.    Defendants actively induced and are actively inducing infringement of at least claim 1 of the '665 patent, in violation of 35 U.S.C. § 271(b).

148.    Alfresco and Blue Fish's customers and end users of the Accused Products directly infringe claim 1 of the '665 patent, at least by using the Accused Products, as described in paragraphs above.

149.    Defendants knowingly induce infringement of at least claim 1 of the '665 patent by customers and end users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

150.    Defendants instruct customers and end users, at least through its marketing, promotional, and instructional materials, to use the infringing Accused Products, as described in detail in the paragraphs above.

151.    Defendants advertise and instruct third parties on how to use the Accused products.

152.    In addition to marketing the Accused Products for use in an infringing manner, Alfresco also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner. Blue Fish provides services and training to customers of the Accused Products that direct and encourage customers of the Accused Products to use the Accused Products in an infringing manner.

153.    Defendants have sales and technical support staff that assist Alfresco's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

154.    At least Alfresco contributes to infringement of the '665 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including, for example, the Alfresco Sync Services and associated software applications. Such components are substantial, material parts of the claimed inventions of the '665 patent and have no substantial non-infringing use.

155.    The Alfresco Sync Services and associated software applications supplied by Alfresco are especially made and especially adapted for use in infringing the '665 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

156.    On information and belief, Alfresco had knowledge of the '665 patent on or around June 5, 2013, the date of the Complaint in *Open Text S.A. v. Box, Inc.*, No. 2:13-cv-00319 (E.D.

Va.), and not later than August 1, 2014, the date of consolidation of *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD (N.D. Cal) and *Open Text S.A. v. Alfresco Software Ltd. et al.*, No. 2:13-cv-04843-JD (N.D. Cal.).

157.    Because Alfresco had knowledge of the '665 patent and proceeded to copy the infringing functionality and willfully, wantonly, deliberately and knowingly infringe, directly and indirectly, the '665 patent, Alfresco's infringement has been and continues to be willful.

158.    Blue Fish has had knowledge of the '665 patent since at least the filing of this lawsuit. Blue Fish's continued infringement is therefore deliberate and willful.

159.    Defendants' infringement of the '665 patent is without license or other authorization.

160.    Defendants' continued infringement of the '665 patent has damaged and will continue to damage Plaintiffs.

161.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '665 patent.

162.    Defendants' infringing acts are causing and will continue to cause Plaintiffs at least irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

163.    This case is exceptional, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '318 PATENT)

164.    OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

165.   Alfresco's products and/or services that infringe the '318 patent include, but are not limited to, the Accused Products and use thereof.

166.   Alfresco makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States. On information and belief, Blue Fish uses, sells, and/or offers to sell the Accused Products and components thereof.

167.   Alfresco and Blue Fish directly infringe—literally and/or under the doctrine of equivalents—at least claim 1 of the '318 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

168.   For example, claim 1 of the '318 patent recites:

1. A system comprising:

a computer processor;

a network interface operable to connect to a network;

a computer readable storage medium storing a software program executable to provide a cache manager on a client computer, the cache manager configured to:

store a file received over the network from a database server as a cached file in a local cache of the client computer;

determine that the cached file has been modified by a local application based on information indicating a change to the cached file received from an operating system of the client computer; and

communicate the modified cached file to the database server.

169.   The Accused Products practice each limitation of claim 1 of the '318 patent.

170.   As recited in the preamble, the Accused Products include a "system." For example, Alfresco's Sync Service includes a system to synchronize files between the desktop and repository, as described in the image below. Alfresco Sync Service, available at: https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.

# Alfresco Sync Service

<u>Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web</u>
<u>services.</u> It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for
Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync
Service.

171.    The Accused Products include "a computer processor" as required by claim 1 of
the '318 patent. For example, Alfresco Desktop Sync, which is part of Alfresco's Sync Services,
can operate on a user's desktop with Windows or Mac operating system as described in the image
below. Either Windows or Mac requires a processor. Alfresco Desktop Sync 1.4, available at:
https://docs.alfresco.com/desktopsync1.4/concepts/ds-overview.html.

# Alfresco Desktop Sync 1.4

With Desktop Sync, desktop users can securely and automatically sync content between their desktop and Alfresco
Content Services.

You can easily connect to Alfresco Content Services and select folders and sites to view and work with on the desktop,
even when working offline.

<u>Once the folders and sites are selected, they are automatically downloaded and visible using Microsoft File Explorer</u>
<u>(for Windows) or Finder (for Mac).</u>

172.    The Accused Products include "a network interface operable to connect to a
network" as required by claim 1 of the '318 patent. For example, Alfresco's Sync Service
synchronizes files between the desktop and repository.  See, Alfresco Sync Service, available at:
https://docs.alfresco.com/syncservice/concepts/syncservice-overview.html.  Therefore,  Alfresco'
Sync Service requires a network interface operable to connect to a network in order to establish a
connection between the desktop and the repository.

# Alfresco Sync Service

Alfresco Sync Service is an add-on module that synchronizes files between the desktop and repository using web services. It's part of the Desktop Sync solution that consists of three components: Sync Service, Desktop Sync for Windows, and Desktop Sync for Mac. This documentation describes how to install, configure, and administer the Sync Service.

173.     In addition, the configuration of Alfresco Desktop Sync allows a user to update the network access configuration as described in the image below, also indicating the presence of at least one network interface in the Accused Products. Configuring Desktop Sync, available at: https://docs.alfresco.com/print/book/export/html/2424609.

**Desktop Sync configuration**

You can configure Desktop Sync using the AlfrescoSync.conf file located at:

- (Windows)

  `<userHome>\AppData\Local\Alfresco`

- (For Mac)

  `~/Library/Application Support/Alfresco`

Using the configuration file, you can update:

- timer values, such as polling and retry intervals
- sync constraint patterns for files/folders to be ignored by Desktop Sync
- disk space limits
- custom content type mappings for particular file extensions
- user interface defaults and customization (including localization)
- network access configuration
- debug logging

174.     The Accused Products include "a computer readable storage medium storing a software program executable to provide a cache manager on a client computer," as required by claim 1 of the '318 patent. For example, Alfresco Desktop Sync is a software program that runs on the user's desktop. During operation, Alfresco Desktop Sync manages a cache of the client's desktop at least by synchronizing the files stored in the cache with a repository, as described by the image below. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html

## Selecting content to sync

Once you've set up Desktop Sync, all your Alfresco Content Services folders are displayed from My Files, Shared Files, and My Sites. Use the Choose files and folders to sync screen to select the content to sync between Alfresco Content Services and your desktop. The content is synced at C:\Users\<username>\Alfresco.

Note: The screen provides an estimate of how much disk space will be occupied, so only select the content you need. The more content you select, the more space will be taken on your local machine and the more time it will take to perform the initial sync.

175.    The Accused Products include a cache manager configured to "store a file received over the network from a database server as a cached file in a local cache of the client computer" as required by claim 1 of the '318 patent. For example, copies of all the content a user has selected to sync for Alfresco Desktop Sync are stored in a local cache, as described in the image below. Desktop Sync also automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html



176.    The Accused Products include a cache manager configured to "determine that the cached file has been modified by a local application based on information indicating a change to the cached file received from an operating system of the client computer," as required by claim 1

of the '318 patent. On information and belief, Desktop Sync registers with the operating system to be notified of changes to files in the local cache. Based on Desktop Sync registering for the notifications, Desktop Sync receives a notification of a change to a cached file in the local cache and determines that the cached file has changed.

177.    A Desktop Sync client can poll the synchronization service for changes every 5 minutes, by default. Changes on the device will trigger a poll of the synchronization service for changes. The synchronization service responds with a set of events that represent what has changed in that folder since the last poll request. Based on that, the client determines, e.g., what changes need to be pushed to the repository and what changes need to be pulled from the repository. *See* Desktop Sync Process, available at: https://docs.alfresco.com/syncservice/concepts/desktop-sync-process.html

178.    The Accused Products include a cache manager configured to "communicate the modified cached file to the database server" as required by claim 1 of the '318 patent. On information and belief, when the cached file has been changed, Desktop Sync saves the cached file back to the Alfresco Content Services repository. The cached file is saved directly back to the Alfresco Content Services repository without the user having to take the additional actions of accessing Desktop Sync and saving the file separately in Desktop Sync.

179.    Desktop Sync automatically keeps both the local copy and the Alfresco versions in sync with each other whenever any changes are made, as described by the image below. *See* Selecting content to sync, available at: https://docs.alfresco.com/desktopsync1.4/tasks/ds-select-sync.html.



180.    Each claim in the '318 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '318 patent.

181.    Defendants are actively inducing infringement of at least claim 1 of the '318 patent, in violation of 35 U.S.C. § 271(b).

182.    Alfresco and Blue Fish's customers and end users of the Accused Products directly infringe claim 1 of the '318 patent, at least by using the Accused Products, as described in the paragraphs above.

183.    Defendants knowingly induce infringement of at least claim 1 of the '318 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

184.    Defendants instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the infringing Accused Products, as described in detail in the paragraphs above.

185.    Defendants advertise and instruct third parties on how to use the Accused products.

186.    In addition to marketing the Accused Products for use in an infringing manner, Alfresco also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner. Blue Fish provides training to customers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.

187.    Defendants have sales and technical support staff that assist Alfresco's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

188.    At least Alfresco contributes to infringement of the '318 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including, for example, the Alfresco Sync Services and associated software applications. Such components are substantial, material parts of the claimed inventions of the '318 patent and have no substantial non-infringing use.

189.    Defendants have had knowledge of the '318 patent since at least the filing of this lawsuit. Defendants' continued infringement is therefore deliberate and willful.

190.    The Alfresco Sync Services and associated software applications supplied by Alfresco are especially made and especially adapted for use in infringing the '318 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

191.    Defendants' infringement of the '318 patent is without license or other authorization.

192.    Defendants' continued infringement of the '318 patent has damaged and will continue to damage Plaintiffs.

193.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '318 patent.

194.    Defendants' infringing acts are causing and will continue to cause Plaintiffs at least irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

195.    This case is exceptional, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, OpenText respectfully requests the following relief:

a) That this Court adjudge and decree that Defendants have been, and are currently, infringing each of the Patents-in-Suit;

b) That this Court award damages to OpenText to compensate it for Defendants' past infringement, through the date of trial in this action, of the Patents-in-Suit;

c) That this Court award pre- and post-judgment interest on such damages to OpenText;

d) That this Court order an accounting of damages incurred by OpenText between six years prior to the filing of this Complaint and the entry of a final, non-appealable judgment;

e) That this Court determine that this patent infringement case is exceptional pursuant to 35 U.S.C. §§ 284 and 285 and award OpenText enhanced damages and its costs and attorneys' fees incurred in this action;

f) That this Court preliminarily and permanently enjoin Defendants from infringing any of the Patents-in-Suit;

g) That this Court order Defendants to:

(i) recall and collect from all persons and entities that have purchased any and all products found to infringe any of the Patents-in-Suit that were made, offered for sale, sold, or otherwise distributed in the United States by Defendants or anyone acting on their behalf;

(ii) destroy or deliver all such infringing products to OpenText;

(iii) revoke all licenses to all such infringing products;

(iv) disable all web pages offering or advertising all such infringing products;

(v) destroy all other marketing materials relating to all such infringing products;

(vi) disable all applications providing access to all such infringing software; and

(vii) destroy all infringing software that exists on hosted systems,

h) That this Court, if it declines to enjoin Defendants from infringing any of the Patents-in-Suit, award damages for future infringement in lieu of an injunction; and

i) That this Court award such other relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

OpenText respectfully requests a trial by jury on all issues triable thereby.

DATED:  October 7, 2020

By:    */s/ Steven Sprinkle*

Steven Sprinkle
TEXAS BAR NO. 00794962
SPRINKLE IP LAW GROUP, P.C.
1301 W. 25TH STREET, SUITE 408
AUSTIN, TEXAS 78705
TEL: 512-637-9220
SSPRINKLE@SPRINKLELAW.COM

Christopher C. Campbell
Virginia Bar No. 36244
Yushan Luo (*pro hac vice to be filed*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5578
Facsimile: (202) 626-3737
ccampbell@kslaw.com
yluo@kslaw.com

Britton F. Davis (*pro hac vice to be filed*)
Angela Tarasi (*pro hac vice to be filed*)
Mikaela Stone (*pro hac vice to be filed*)
KING & SPALDING LLP
1515 Wynkoop St.
Suite 800
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400
bfdavis@kslaw.com
atarasi@kslaw.com
mikaela.stone@kslaw.com

*Attorneys for Plaintiffs Open Text Corp. and*
*Open Text S.A. ULC*